```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
KAHALA CORP., and KAHA ACQUISITIONS VI,  :
LLC,                                     :
                      Plaintiffs,        :    10 Civ. 4259 (DLC)
                                         :
             -v-                         :         OPINION
                                         :         AND ORDER
WILLIAM B. HOLTZMAN, TRI-STATE POTOMAC,  :
INC., HOLTZMAN EXPRESS, LC, XPRESS       :
STOP, INC., and GETGO, LLC,              :
                      Defendants.        :
                                         :
-----------------------------------------X
```

Appearances:

For the plaintiffs:
Vincent L. DeBiase
William W. Frame
Corbally, Gartland and Rappleyea, LLP
35 Market Street
Poughkeepsie, NY 12601

For the defendants:
Leonard D. Steinman
Jeremy L. Reiss
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
-and-
Thomas A. Schultz, Jr.
Law Office of Thomas A. Schultz, Jr.
240 Merrifield Lane
Winchester, VA 22602

DENISE COTE, District Judge:

     The defendant William B. Holtzman ("Holtzman") has moved to

dismiss the plaintiffs' second amended complaint for lack of

personal jurisdiction.[1]  For the following reasons, the motion is denied.

## BACKGROUND

The plaintiffs Kahala Corp. and Kaha Acquisitions VI, LLC ("Kahala") are a franchising company for several quick-service restaurant brands and its wholly-owned subsidiary.  In 2007, Kahala acquired certain assets from Blimpie Associates Ltd. ("Blimpie"), including the entire Blimpie Subs & Salads brand, franchising system, intellectual property, and existing franchise agreements.  The contracts at issue in this lawsuit are franchising agreements between Blimpie and entities associated with Holtzman (the "Entity Defendants")[2] that Kahala assumed as part of the acquisition.

Between 1994 and 2003, the Entity Defendants entered into seven franchise agreements to operate Blimpie Subs & Salads quick-service restaurants ("Blimpie Stores") in various Virginia locations (the "Franchise Agreements").  The terms and conditions of the Franchise Agreements are identical in all

---

[1] The defendants' motion to dismiss the second amended complaint for failure to state a claim is denied in a Memorandum Opinion and Order of today's date.

[2] The Entity Defendants are the remaining defendants in this action:  Tri-State Potomac, Inc. ("Tri-State"), Holtzman Express, LC ("Express"), XPress Stop, Inc. ("XPress Stop"), and GetGo, Inc. ("GetGo").

cases except for the name of the franchisee and the dates within the agreement.  Pursuant to the terms of the franchise agreement, Blimpie granted each of the Entity Defendants a license to operate a Blimpie Store for a period of 20 years.

Holtzman signed at least two of the Franchise Agreements on behalf of the Entity Defendants.  In addition, Holtzman signed each Franchise Agreement in his individual capacity -- as William B. Holtzman, Individually -- beneath the following text (the "Individual Provision"):

> By execution of this Agreement, the undersigned stockholder(s) of the corporate Operator, or members of the LLC, or the individual Operator hereby <u>personally accepts and agrees to comply</u> with Articles 10 & 16 of this Agreement and acknowledges that the Franchisor has executed this Agreement in reliance upon the commitments contained in this paragraph.

(Emphasis supplied.)

Article 10 of the Franchise Agreements requires the Entity Defendants and their shareholders, officers, directors, partners, or members to keep certain information confidential and not to compete against Blimpie in the submarine sandwich business during the term of the agreement and for a certain period thereafter.  Article 16 contains the parties' "Rights and Obligations Upon Termination."  That section states, among other things, that "[u]pon the termination of Operator's rights

granted under this Agreement," that the Operator shall immediately pay any amount owing to Blimpie.

The Franchise Agreements state that ceasing to operate or otherwise abandoning a Blimpie Store constitutes a default under the agreement.  Between March 25, 2007 and October 28, 2009, the Entity Defendants unilaterally closed the Blimpie Stores that were the subjects of all of the Franchise Agreements.  On December 23, 2009, Kahala notified the defendants that they had breached the Franchise Agreements by unilaterally closing the Blimpie Stores.

The plaintiffs commenced this action on May 26, 2010.  They filed an amended complaint on June 16.  On August 18, Holtzman and the Entity Defendants[3] each filed motion to dismiss the amended complaint.  At an initial conference with the Court on September 1, 2010, the plaintiffs were advised that any subsequent amendment of the complaint would be their final opportunity to amend.  The plaintiffs filed a second amended complaint on October 14, 2010.  The defendants filed a motion to dismiss the second amended complaint on October 20, and the motion was fully briefed on November 12.

---

[3] At that time, Tri-State was not a named defendant.

DISCUSSION

Holtzman moves to dismiss the complaint against him for lack of personal jurisdiction. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. American Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010) (citation omitted). Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss. Id. at 35 (citation omitted).

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006). To enforce a forum selection clause, "[a] court must first determine that the existence of the clause was reasonably communicated to the parties." Id. If it was, the selection "will be upheld unless the clause was obtained through fraud or overreaching," or if enforcement would be "unreasonable and unjust." Id. (citation omitted).

The Franchise Agreements contain the following provisions regarding execution and forum selection:

> [T]his Agreement shall be deemed to be
> executed and delivered in the City of New
> York, . . . regardless of the domicile of

> the Operator, and shall be governed by and
> construed in accordance with the laws of the
> State of New York.
> . . . .
> Any and all claims asserted by or against
> the Operator, arising under this Agreement
> or related thereto, shall be heard and
> determined in either [federal or state
> courts] located in City and County of New
> York, State of New York[.]

By virtue of signing the Individual Provision in the Franchise Agreements, Holtzman consented to personal jurisdiction in the Southern District of New York.  The forum selection clause was reasonably communicated to Holtzman; it appears in a well-marked section labeled "Legal Proceedings: Jurisdiction, Construction and Interpretation" four pages ahead of the signature page.  There is no claim that the forum selection clause was obtained through fraud.

Nor would applying the forum selection clause to Holtzman individually be unreasonable or unjust.  This is the case even though, as he argues, the forum selection clause in the contract is not contained in either Article 10 or Article 16, the provisions named in the Individual Provision.  It is reasonable to enforce the forum selection clause against Holtzman for two reasons.  First, because the Franchise Agreements make clear that any claim "arising under" Article 10 or Article 16 will be heard in this jurisdiction, Holtzman agreed to be bound by the

6

forum selection clause when he agreed to comply with those provisions.

Second, even if Holtzman was not a signatory to any portion of the Franchise Agreements except Articles 10 and 16, "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009). Under New York law, a forum selection clause may be enforced against a non-signatory who is "closely related" to the dispute such that enforcement of the forum selection clause against him is foreseeable. Firefly Equities, LLC v. Ultimate Combustion, Inc., ___ F. Supp. 2d. ___, No. 10 Civ. 1868(JSR), 2010 WL 3517396, at *2 (S.D.N.Y. Sept. 10, 2010). See also Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998). Holtzman is closely related to the contract dispute and to each of the Entity Defendants. By signing the Individual Provision in each Franchise Agreement, Holtzman personally guaranteed provisions of the Franchise Agreements that are at issue here.

Holtzman argues that the contract reflects his intent not to be bound by the forum selection clause because the Individual Provision specifically excluded any reference to Article 21, where the forum selection clause appears. But, the Individual Provision does not specifically exclude the forum selection

provision -- it does not purport to exclude anything specifically. Nor does the Individual Provision exclude Article 21 by implication. Any claim arising out of Article 10 or 16 would unquestionably fall within the scope of the forum selection clause.

## CONCLUSION

Holtzman's October 20 motion to dismiss is denied. Because Holtzman consented to personal jurisdiction, it is unnecessary to reach the plaintiffs' argument that long-arm jurisdiction over Holtzman exists under New York law.

SO ORDERED:

Dated:    New York, New York
          December 3, 2010

                                    */s/ Denise Cote*
                                    DENISE COTE
                                  United States District Judge